UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAMARCUS MCGEE** | **CIVIL ACTION** |
| **versus** | **NO. 11-2768** |
| **N. BURL CAIN, WARDEN** | **SECTION: "I" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, LaMarcus McGee, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On May 2, 2007, he was convicted of attempted aggravated rape,

aggravated burglary, and aggravated escape under Louisiana law.[1] On June 13, 2007, he was sentenced as follows: forty years for attempted aggravated rape; ten years for aggravated burglary; and two years for aggravated escape. It was ordered that those sentences be served consecutively.[2] Although petitioner did not file a timely appeal, he was subsequently granted an out-of-time appeal.[3] On February 13, 2009, the Louisiana First Circuit Court of Appeal then affirmed the attempted aggravated rape conviction and sentence, affirmed the aggravated burglary conviction; amended the aggravated burglary sentence to specify that it was to be served at hard labor and affirmed that sentence as amended, reversed the aggravated escape conviction and modified it to a conviction of simple escape, and remanded the matter to the state district court for sentencing on that modified conviction.[4] On August 5, 2009, petitioner was sentenced to a consecutive term of two years imprisonment for simple escape.[5]

---

[1] State Rec., Vol. III of V, trial transcript, pp. 532-33; State Rec., Vol. IV of V, minute entry dated May 2, 2007; State Rec., Vol. I of V, jury verdict forms.

[2] State Rec., Vol. III of V, transcript of June 13, 2007; State Rec., Vol. I of V, minute entry dated June 13, 2007.

[3] State Rec., Vol. I of V, Order dated March 10, 2008.

[4] State v. McGee, No. 2008 KA 1076, 2009 WL 390809 (La. App. 1st Cir. Feb. 13, 2009); State Rec., Vol. IV of V.

[5] State Rec., Vol. IV of V, minute entry dated August 5, 2009.

Apparently at some point while that appeal was pending, petitioner filed an application for post-conviction relief with the state district court.[6] That application was denied as prematurely filed on March 18, 2009.[7]

On January 15, 2010, petitioner filed another application for post-conviction relief with the state district court.[8] That application was denied on February 2, 2010.[9] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on May 24, 2010,[10] and by the Louisiana Supreme Court on August 19, 2011.[11]

On October 11, 2011, petitioner filed the instant federal application for *habeas corpus* relief.[12] In support of his application, he asserts the following claims:

---

[6] State Rec., Vol. V of V.

[7] State Rec., Vol. V of V, Order dated March 18, 2009.

[8] State Rec., Vol. IV of V. The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record, this Court will simply use the signature date as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed.

[9] State Rec., Vol. IV of V, Order and Reasons for Judgment dated February 2, 2010.

[10] State v. McGee, No. 2010 KW 0381 (La. App. 1st Cir. May, 24, 2010); State Rec., Vol. IV of V.

[11] State *ex rel.* McGee v. State, 67 So.3d 1247 (La. 2011) (No. 2010-KH-1750); State Rec., Vol. IV of V.

[12] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). That date is not apparent from the record; however, because petitioner signed the application on October 11, 2011, it was obviously delivered to prison officials for mailing no earlier than that date.

1. Petitioner received ineffective assistance of counsel; and

2. Petitioner was denied meaningful judicial review by the state court's refusal to provide voir dire, trial, and sentencing transcripts for his use in the post-conviction proceedings.

## I. Timeliness

The state contends that petitioner's federal application is untimely.[13] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."[14] Further, the United States Fifth Circuit Court of Appeals has explained:

> When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek

---

[13] Rec. Doc. 16.

[14] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

> further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Additionally, for the purposes of the AEDPA, a state criminal judgment is not final until *both* the petitioner's conviction *and* sentence are final. See Burton v. Stewart, 549 U.S. 147, 156-57 (2007); Scott v. Hubert, 635 F.3d 659, 665-67 (5th Cir.), cert. denied, 132 S. Ct. 763 (2011). Because petitioner's sentences became final at different times, his criminal judgments must be considered separately.

### A. Attempted Aggravated Rape and Aggravated Burglary

In the instant case, petitioner's federal limitations period was reset once he was granted an out-of-time appeal. As the United States Supreme Court has explained:

> [W]here a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet "final" for purposes of § 2244(d)(1)(A). In such a case, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal.

Jimenez v. Quarterman, 555 U.S. 113, 121 (2009). Jimenez is clearly applicable to cases in which an out-of-time appeal has been granted under Louisiana law. Brooks v. Cain, 354 Fed. App'x 870 (5th Cir. 2009).

As noted, in ruling on the out-of-time appeal, the Louisiana First Circuit Court of Appeal affirmed petitioner's criminal judgments for attempted aggravated rape and aggravated

burglary on February 13, 2009. Therefore, for AEDPA purposes, those judgments became final no earlier than March 16, 2009, when his time expired for seeking further direct review by the Louisiana Supreme Court.[15]

Once petitioner's federal limitations period commenced on that date, he had only one year in which to file his federal application. However, the AEDPA expressly provides that a petitioner's one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending ...." 28 U.S.C. § 2244(d)(2).

Petitioner filed two post-conviction applications which are arguably relevant for tolling purposes. The first such application was filed on an unknown date and denied on March 18, 2009. Because the state court denied that application on procedural grounds, finding that it had been filed prematurely while the appeal was still pending, it is questionable whether it was "properly filed" so as to entitle petitioner to tolling. However, this Court need not decide whether petitioner is in fact entitled to tolling based on that application, because his federal application is timely based solely on the second such application for the following reasons.

Even if petitioner's first post-conviction application is disregarded, only three hundred four (304) days of the federal limitations period elapsed before being tolled by the filing of the second post-conviction application on January 15, 2010. Tolling then continued uninterrupted

---

[15] Pursuant to Louisiana Supreme Court Rule X, § 5(a), a litigant has thirty days to file a writ application to challenge a judgment of a Louisiana intermediate appellate court. However, in this case, the thirtieth day, March 15, 2009, was a Sunday; therefore, the period was extended through the following day. See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

for the duration of the post-conviction proceedings, so long as petitioner sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004). The state does not argue that petitioner's related writ applications were untimely filed with the Louisiana First Circuit Court of Appeal or the Louisiana Supreme Court. Accordingly, this Court finds that tolling did not cease until the Louisiana Supreme Court denied relief on August 19, 2011.[16]

At that point, petitioner had sixty-one (61) days of the limitations period remaining. Because his federal application was filed fifty-three (53) days later on October 11, 2011, it was timely filed as to the convictions for attempted aggravated rape and aggravated burglary.

### B. Simple Escape Conviction

As noted, the Louisiana First Circuit Court of Appeal reversed petitioner's aggravated escape conviction, modified it to a conviction of simple escape, and remanded the matter for sentencing. Therefore, that criminal judgment did not become final for AEDPA purposes until September 4, 2009, when petitioner's time expired for filing an appeal with respect to the sentencing of August 5, 2009.[17] Accordingly, his one-year period for seeking federal *habeas corpus* relief as to that conviction did not commence until that date.

---

[16] A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

[17] Under state law, petitioner had thirty days to move for an appeal. La.C.Cr.P. art. 914.

For the reasons previously discussed, only one hundred thirty-two (132) days of the federal limitations period then elapsed before the period was tolled by the filing of the post-conviction application on January 15, 2010. When those post-conviction proceedings ended and tolling ceased on August 19, 2011, petitioner had two hundred thirty-three (233) days remaining to file his federal application. Because he filed his application a mere fifty-three (53) days later on October 11, 2011, it was timely filed as to the conviction for simple escape.

Because petitioner's federal application is timely as to all his convictions, and because the state raises no other procedural defenses in this proceeding, the Court will turn to the merits of petitioner's claims.

## II. Standards of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this

Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

### III.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of the instant case as follows:

> On April 12, 2005, at about 11:30 p.m., the defendant and his cousin, Lionell Bellazar, went to Amite to the home of seventy-six-year-old C.H., who lived alone.[FN1] Bellazar, who knew C.H., loudly knocked on her door, rang the doorbell, and called her name. As C.H. opened the door a bit, she was struck in the face. She fell to the floor, and the defendant and Bellazar entered her house. While on the floor, C.H. was struck again on the head behind her right ear. The defendant asked where the money and guns were and threatened to kill C.H. C.H. said there were no guns, but the money was in the back bedroom. The defendant pushed her down the hall to the bedroom.
>
>> [FN1] Captain Mike Foster, with the Amite City Police Department, testified at trial that Bellazar was the person with the defendant. In his taped confession, the defendant stated to Captain Foster that he was with Bellazar, his cousin.
>
> The defendant, who was holding C.H. from behind, brought her near the bed and slammed her head against the wall. C.H. was wearing only a gown and a robe. The defendant stood her up against the bed, with her back facing him, and unzipped his pants. According to C.H., who testified at trial, she felt what she thought to be a penis between her legs and five or six thrusts. The last thrust bumped her clitoris. The defendant then stopped and searched the other rooms. The defendant shoved C.H. into a closet. The defendant and Bellazar left C.H.'s home and took her vehicle. C.H. called 911. She was unable to identify her attacker. Items taken included C.H.'s deceased husband's wedding ring, watch, and tie clips and a family ring.
>
> The following day, Captain Foster found C.H.'s vehicle at the Amite Jiffy Mart on South 51 Street. The vehicle was being driven by the defendant. The defendant was placed under arrest, "Mirandized," and booked at the Amite City Police Department. Two days later, Captain Foster interviewed the defendant. In the

interview, which was videotaped, the defendant admitted to the burglary and sexual assault of C.H. However, he denied that he penetrated C.H. The defendant stated he put on a condom and "tried, but it wouldn't go in."

The day after the defendant's interview with Captain Foster, the defendant was taken out to the area where he allegedly threw the weapon, a piece of pipe, used in the incident. While the officers were searching for the piece of pipe, the defendant effected an escape by driving away in the unguarded police unit. Later that evening, the defendant was apprehended in Livingston Parish by Livingston Parish Sheriff Office deputies.[18]

## IV. Petitioner's Claims

### A. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel. The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth

---

[18] McGee, 2009 WL 390809, at *1-2; State Rec., Vol. IV of V.

Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner's ineffective assistance of counsel claims were rejected by the state courts in the post-conviction proceedings. Because such a claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest

> intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims.

Petitioner first argues that his counsel was ineffective for preventing petitioner from taking the stand to testify in his own defense. "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). However, petitioner has offered no evidence to show that counsel prevented him from testifying, and the record does not suggest that he ever made known to the trial court that his counsel was refusing to allow him to testify despite his stated desire to do so. Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should

not be dispositive of the issue. See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276, 278 (5th Cir. 2003). Nevertheless, the Court cannot ignore the fact that petitioner has never presented *any* evidence to corroborate his allegations. Without more, a petitioner's bare allegations that his counsel prevented him from testifying are insufficient to warrant relief. See, e.g., Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Garrett v. Cain, Civ. Action No. 10-1079, 2011 WL 1468251, at *14-15 (E.D. La. Mar. 16, 2011), adopted, 2011 WL 1468137 (E.D. La. Apr. 18, 2011); Mosley v. Cain, Civ. Action No. 06-6259, 2009 WL 2982930, at *4-5 (E.D. La. Sept. 14, 2009); White v. Cain, Civ. Action No. 06-1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); Turcios v. Dretke, No. Civ. A. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005). This Court finds that, in light of the complete lack of evidentiary support for petitioner's underlying factual contention, he has failed to meet his burden of proof with respect to this claim.[19]

---

[19] If petitioner is perhaps also alleging that his counsel was ineffective for failing to call him testify, the Court likewise rejects that claim. A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002); Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); Curtis v. Cain, Civ. Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008). Further, such a matter is inherently one of trial strategy, and, as previously noted, federal *habeas* courts are not to lightly second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.
    The instant *habeas* proceeding is far removed from the context of the actual trial, and this Court has no mechanism available to fairly judge counsel's assessment of his own client at the time and his view of the strength of the prosecution's case as it was presented live. Under these circumstances and in light of the foregoing law regarding the deference that must be accorded to counsel's strategic decisions, the Court declines to second-guess counsel's decision not to put petitioner on the stand. This Court simply cannot find that counsel performed deficiently by failing to have petitioner testify at trial. Accordingly, this claim should be rejected.

Petitioner next argues that his counsel was ineffective for failing file a motion for reconsideration of the sentences. This argument clearly has no merit for the following reasons.

As a preliminary matter, the Court notes that the sentences petitioner received not only conformed to the law but they were also well below the maximum sentences he faced. For the attempted aggravated rape conviction, he faced a sentence of ten to fifty years without benefit of parole, probation, or suspension of sentence, La.Rev.Stat.Ann. §§ 14:27(D)(1)(a) and 42(D)(1); he was sentenced to only forty years. For the aggravated burglary conviction, he faced a sentence of one to thirty years, La.Rev.Stat.Ann. § 14:60; he was sentenced to only ten years. For the simple escape conviction, he faced a sentence of two to five years, La.Rev.Stat.Ann. § 14:110(B)(3); he was sentenced to the statutory minimum of two years.

In any event, "[t]he failure to file a motion to reconsider sentence does not by itself constitute ineffective assistance of counsel. In order to prevail, the petitioner must show a reasonable probability that, but for counsel's error, his sentence would have been different." Green v. Cain, Civ. Action No. 97-3206, 1998 WL 259970, at *7 (E.D. La. May 19, 1998). Given the horrific nature of petitioner's crimes, as well as petitioner's failure to bring forth any evidence whatsoever showing that lesser sentences were warranted, there is no reasonable probability that the filing of a motion for reconsideration of sentence in this case would have resulted in a lesser sentence either by the trial judge[20] or on appeal, and petitioner's conclusory statements to the contrary "fall far short of satisfying Strickland's prejudice element." Doucet v. Terrell, Civ. Action

---

[20] Indeed, the trial judge's comments at sentencing clearly indicate that he was not in any way inclined to impose lesser sentences. State Rec., Vol. III of V, transcript of June 13, 2007.

No. 6:11-cv-0124, 2011 WL 4712103, at *5 (W.D. La. Apr. 20, 2011), adopted, 2011 WL 4712057 (W.D. La. Oct. 5, 2011). Therefore, petitioner cannot show that he was prejudiced by counsel's actions in this regard.

For all of these reasons, petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standard applicable to ineffective assistance claims, this Court likewise rejects petitioner's claims.

### B. Denial of Meaningful Judicial Review

Petitioner next claims that he was denied meaningful judicial review by the state court's refusal to provide voir dire, trial, and sentencing transcripts for his use in the post-conviction proceedings. Those transcripts were produced and made available to counsel for use in the direct appeal; however, when petitioner subsequently sought his own copies for use in the state post-conviction proceedings, the trial court refused to provide them.

Even if the trial court erred in that respect, which is an issue this Court need not and does not reach, federal *habeas corpus* relief simply cannot be granted to remedy such an error in post-conviction proceedings. As the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. See, e.g., Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding

> collateral to the detention and not the detention itself.") (internal quotations omitted). Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.

Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); see also Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *23 (E.D. La. Oct. 29, 2009); Baham v. Allen Correctional Center, Civ. Action No. 07-4075, 2009 WL 3148757, at *3 (E.D. La. Sept. 30, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008). Although application of this rule often proves harsh, the Fifth Circuit recently emphatically reiterated that it must nevertheless be followed, stating:

> We, as a federal appeals court entertaining a federal habeas corpus application, are without jurisdiction to review the constitutionality of [the petitioner's] state postconviction proceedings. Indeed, we are barred from doing so by our "no state habeas infirmities" rule. ... [O]ur hands are tied by the AEDPA, preventing our review of [the petitioner's] attack on his Louisiana postconviction proceedings, so we dutifully dismiss his claim.

Kinsel v. Cain, 647 F.3d 265, 273-74 (5th Cir.) (footnote omitted), cert. denied, 132 S.Ct. 854 (2011). This Court's hands are likewise tied with respect to the instant claim, and therefore that claim must be denied.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by LaMarcus McGee be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[21]

New Orleans, Louisiana, this thirteenth day of March, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.